As you note, Justice Shelvin-Hall is not here, but she will listen to the tapes and she will be part of our decision-making process. Now, how much time do you need for rebuttal? We have three minutes, please. Okay. Thank you. May it please the Court, Mr. Horvath. Again, my name is Phil Stanton and I represent the appellant Gary Sams. Mr. Sams was convicted of first-degree murder and sentenced to 30 years in the Illinois Department of Corrections. On appeal, he challenges that conviction and also asserts that the trial court made a number of improper rulings that denied him a fair trial. I'd like to start with the sufficiency of the evidence in this case. Essentially, there were three key witnesses at trial, a victim by the name of Mario Gallegos, a confidential informant by the name of Wayne Cates, and the recorded statements of Mr. Sams himself that he gave to detectives at the Area 1 police station. Even in the light most favorable to the State, no rational trier of facts would have found the essential elements of first-degree murder beyond a reasonable doubt. If we start with the testimony of Mario Gallegos, again, he was the one surviving eyewitness and he identified the attackers in this case as four to five male Hispanics in their 20s. Gallegos testified that he could see all the attackers facing him in a horseshoe, that Ashland Avenue that early morning was well lit, and while the State posits he may not have had a perfect view... Why don't we take it from the point of what the defendant himself said? He says he was there, he says he kicked somebody. He made a lot of stories, but the last story he gave, he was there, he kicked, he was at a party, they all ran out, it was a gang party. Sure, the last story was that he kicked Gallegos himself. Gallegos testified... I mean, he was there, he was part of this design. How do you prove he wasn't part of this design? Well, so Mr. Sams gave a number of different statements throughout the 30 hours of his confinement. And those statements obviously evolved as time went on. The last statement being, okay, I kicked the kid in the blue shirt, the kid in the blue shirt being Gallegos. Gallegos testified he was never kicked. Sams said, I ran out on 34th and Ashland and that's where this took place. Let's assume he wasn't kicked. Let's assume he wasn't kicked. Let's assume he tried to kick him. Okay. But he was there, he was part of this design. How do you get around that? I don't think he was part of a design. Well, show me how. Okay, so there's an incident that takes place outside the Barbecue Patio restaurant that was testified to be at 3258 South Ashland. Sams says he's a block and a half away at 34th and Ashland. The incident at Barbecue Patio is where the decedent unfortunately gets stabbed and killed. A block and a half away, where Sams said he was, is where this attempt kick takes place. Well, isn't he at this party at Montreal's house? Beanie, Montreal. He was at the party, absolutely. I don't think there's any question about that. Okay, and they leave from the party? Yes. They leave from the party. Several attendees of that party leave the party. And wasn't he one of them? Eventually. I don't think he was one of the... Okay, but he left. Right, he left. Now, the question becomes, does he leave and run to the alley, like he initially says? Does he leave and run to Ashland and everybody's running back at that point, like he later said? Or the last statement was, I think I may have tried to kick him, I'm not sure. Detective said, well, where did you try to kick him? I don't know. I mean, the jury heard the evidence here. The jury decided the demeanor of the witnesses. The jury made the credibility determinations here. And assuming that Gallegos was found credible, which by all accounts he was found credible, he said, I got attacked by Hispanic guys and I never got kicked. The confession is... Yeah, but here's the big thing about the kick. I think it all has to do with the design and a gang is going after somebody and he's part of the group. Let's assume he didn't kick anybody. I don't think that would make a difference. Well, if the gang goes after one guy down here and stabs and kills him, I think that's a different analysis than two other guys running in a separate direction, possibly kicking, maybe not kicking, and that guy running away. Well, supposedly the event occurred within a few feet of each other. I think the testimony trial belied that. I think the one incident is at 34th and Ashland. The barbecue patio restaurant was testified to being at 3258 South Ashland. The White Castle where the decedent eventually walked into was at 32nd and Ashland, which would make sense. Yeah, but it's the jury who decides which story they're going to believe, okay? Okay. And what you're trying to do is argue on appeal that we should change something and you have to have a reason for us to change. Well, if they're believing the confession, they're believing what Sam said, that he tried to kick somebody or he possibly shared some sort of intent or design, then there has to be corroborating evidence of that, and there is no corroboration of that confession whatsoever. You have Gallegos, who was there, who was being attacked, who said I was attacked by Hispanic guys, sees Sam's in a lineup, no, that wasn't one of the guys that attacked me. What case tells you you have to have corroborating evidence? Where do you get this from? In Illinois. Okay. So people versus Furby, people versus Washington, which is the 2012 Illinois Supreme Court case 110283, independent evidence must substantially show the perpetration of the crime by the accused. Facts independent of the confession and consistent therewith must tend to confirm and strengthen the confession. The fact that he gave a confession and said that he was at the event, isn't that corroborating evidence? Apart from the confession is the corroborating evidence. Evidence independent of the confession has to corroborate the confession, and in this case there's zero evidence that corroborates that. Gallegos doesn't corroborate that. The confidential informant who tells the police who participated in this assault said it was, again, for Hispanic males. But the jury heard all that evidence. They did. All right, go ahead. Proceed. The confidential informant was a gentleman by the name of Wayne Cates. Cates had been implicated on a murder by a fellow gang member and decided I'm not going to be in this gang anymore, I'm actually going to give the police information about it. He says, I'm at a gang meeting in August of 2010, so two or three months after this incident takes place. At that gang meeting, the perpetrators of this attack confessed to me. They told me who was present, who did what, who did the swinging of the baseball bat, who stabbed the decedent. Gary Sams, one, is not at that gang meeting where they're choosing a new gang leader and if you're part of the gang you need to be there. And two, it wasn't identified by any of the individuals at that meeting as being present for this attack. One individual, Colon, says, yeah, I'm the one that swung the bat. One individual, Guerrero, says, yeah, I'm the one that did the stabbing. Nobody ever says that Gary Sams was anywhere near that incident back on May 30th of 2010. You probably watched and you heard of Sams' confession and I would submit to you that that confession, when considered in light of the other evidence in this case, doesn't hold much water. The second issue that I raised was the admission of gang evidence. And at a pretrial hearing, the state fronted that they were going to try to elicit gang evidence. The defense objected to that. Now, the pretrial hearing, the state rested its head on two different things where it could show that gang evidence was appropriate here. The first issue that it said was appropriate was that the surviving victim, Mr. Gallegos, would say that when the individuals approached him, they said something along the lines of, what are you or who are you with, to try to identify him as a gang member. However, when Mr. Gallegos testified, he said, the individuals that approached me never said anything, didn't flash any gang signs, there were no words exchanged whatsoever. So that doesn't bolster the state's theory of gang evidence. Gang evidence wasn't used to identify Mr. Sams in this case because there was, first of all, Mr. Sams wasn't identified by Gallegos, but second, there were no words exchanged that would indicate that these were gang members that were committing the attack. The second thing that the state said at the pretrial hearing was this issue of the tattoos. And I invite you to look at the exhibits because the tattoos on Mr. Sams may have been placed there sometime in the 90s but are very, very faded. The pictures were taken in 2012, two years after this attack, and you could see for yourself that those tattoos don't indicate somebody that's still active and involved in a gang. With all these gang members, isn't that enough for the jury to determine that he's at least associated with the gang? I think the testimony was it was a going-away party. He said, I used to be a gang member, I still live in the neighborhood. And that's why he was at the residence that night because it was a going-away party for Beanie or Monreal or whoever you want to term him. That's why he was at the house that night. It wasn't a gang meeting. There was a gang meeting in August. He wasn't there. I think it was a going-away party that contained some gang members and some regular civilians. So you're sure you're picking on this testimony. In fact, should we look at it all in one package and see whether or not it cooperates the defendant's statements in this case? I mean, we know there was an incident, right? Guy Abrams cooperates the defendant's statement saying that there was an incident, right? So we know that, right? 100 percent there's an incident. Okay. And each piece of evidence, these testimonies and these statements that we have in this case tend to cooperate with the defendant's profession. But this was dealt with at a pretrial hearing where the trial court was in the position whether to admit this evidence in the first place or not. And did the State meet its burden at that pretrial hearing to show that this evidence was relevant, to show that it had an expert that was competent to testify about it? Absolutely not. So I don't even think we should consider the evidence as a whole at trial where it was a pretrial ruling that allowed the floodgates to open in the first place. Then you have pretty much a gang sideshow. But what if the trial court abuses discretion in allowing this testimony in? What specifically did the trial court do in terms of was error here in letting this testimony in? First, there was no showing that Sam was a gang member in 2010. There was no foundation for his tattoos to say he got this tattoo on his body at or around the time that this incident took place or that the tattoo was 15 years. But you see, the jury heard all of that. They heard all of that. He's with the gang members. He goes out there when they find a flake. So they're going to go beat up and maybe kill the flake because somebody infringed on their territory. And he's with the group. That's enough evidence. If he's not a gang member, he's certainly associated and he's part of the design. But there wasn't enough evidence in Estrada. In Estrada, there's gang members that go out trying to intimidate or scare other gang members. The gentleman jumps out of the car with a tire iron, breaks a window, chases after another rival gang member. These are questions of fact that are decided by the trier of fact. It's like you say that we throw out the confession because there's no corroborating evidence. Well, in Illinois, our Supreme Court, in the case of People v. Sargent, 239 Illinois 2nd, 166, a 2010 case holds that the only thing you have to show with the confession is that a crime was committed by the defendant. That a crime was committed by the defendant. That's all you need to show. That's a corroboration. And the question of whether a crime was committed is whether he was part of this design. Because otherwise, every gang murder, nobody's responsible. I think the individual... The juries think otherwise. The individual who stabbed the decedent is definitely responsible. But the same Supreme Court two years later said it has to corroborate not just that a crime committed but the identity of the accused. Well, identity is part of his confession. That's part of the corpus delicta. He says he was there. He went out to participate, to get the flake. The corpus delicta rule says facts independent of that confession have to strengthen that confession. Independent means a crime was committed by the defendant. I disagree with the independent evidence here. The fact that you had gang members going out to a scene to take care of a situation, right, and they may have been a member of a gang. So the trial court allows the sentence to see whether or not it, in fact, is relevant. That was the bottom line here. The independent evidence does not corroborate what Sam said. A 6'3", 260-pound white guy is not identified by a surviving victim who says... But that's not the point here. The point in here is you're arguing that the gang members shouldn't have come in. He was a promoted gang member in the past. Let's just say for argument's sake that he wasn't at the time of the trial, all right, or the time of the incident. But he was. This was a gang activity, all right? So the evidence was relevant to determine whether or not he was actually involved as a gang member. I don't think there was ever a foundation for saying that while he was a gang member in the past, in 98 or 99, 98 was the arrest report that labeled him a gang member. Twelve years later, they provided no foundation. Officer Schmeller couldn't say when those tattoos were placed, when he was identified as a gang member. So I don't think 12 years later you can make that leap. If you have no further questions, I'll reserve the remaining time for rebuttal. Thank you. Good morning. May it please the Court. Again, Assistant State's Attorney Douglas Harbath on behalf of the people of the State of Illinois. The evidence in this case amply supports the defendant's first-degree murder conviction predicated on felony murder and knowing and intentional murder, where he confessed to participating in the mutual beating of Mario Villegas and Alan Oliva. Where the defendant rarely participated in the mob action, and he joined in with co-defendants when the beating was already taking place, he was probably convicted of felony murder. The defendant was also accountable for the acts of the co-defendants who brutally beat and stabbed Alan Oliva to death because the victim, excuse me, the defendant, voluntarily attached himself to a group whose common design was to carry out this attack. All right. What about Gallegos' testimony? Whose testimony? Gallegos. Well, Gallegos testified to the actual incident. He testified what happened. He didn't identify as a defendant. He didn't identify the defendant. He was not able to. But he did identify Gallegos, the co-defendant. But despite the defendant's efforts to portray this as an identification case, it was not an identification case. And as this Court pointed out in this question earlier, the defendant admitted to his involvement. He admitted that he was there. He admitted that he was there with Ramirez, with Gallegos, and with Colon. And he gave explicit details about what happened. He said that he was an SD, a Satan Disciple, that he's still associated with the Satan Disciples, but he denied that he was an active member. He said, on this day, they were at the barbecue at Beany's house. He said that Colon came in, Little Triggy called him, and told him, well, here, there's some flakes out there, some comps. Let's go jump on them. So what does the defendant do? He joins with, he accompanies all the co-defendants as they run out of the house at full speed after these flakes to go jump on them. And then he tells about his involvement, and he did vacillate on his involvement. He even, at one point, gave an alibi. He wasn't there. Okay, I was there. Okay, I ran out, and they were all running back by the time I got there. Okay, I got there, and I saw that the victim, that Mario, the one with the blue shirt, was being beaten up, that he was hit with a baseball bat, and that I kicked him one time. This defendant is a principal in the mob action. He's working with these co-defendants. He's beating up the victims. He's kicking one of the victims as the other is used the best, and then eventually Allen is stabbed. So he's not really accountable for a felony murder. He's a principal. He's an actor. He's accountable for their behavior, but he's also part of the common design. And for that reason, he's guilty of a felony murder. But he's also accountable, and there is a lot of overlap between the proof that's required for mob action and the concept of legal responsibility. We're all working together. But he was clearly acting with the co-defendants together and in concert with them. He maintained a close affiliation with them before, during, and after the incident. He admitted that his motivation for going out and jumping on these flicks was the same motivation as the co-defendants. To the extent that the defendants minimized statements about his actual involvement, well, maybe I kicked him, or maybe I didn't kick him, or I tried to kick him, but I didn't actually strike him. It doesn't matter. The cases are clear. There was a Supreme Court case in 2004 called Davis. It's not necessary to prove the defendant actually struck the deceased victim, much less that he performed the acts that caused the killing, and that's a quote. Well, he admitted to being involved with the beating, that he was participating in the attack. That makes him accountable. It also makes him a principal in the mob action. The evidence in this case is very strong with regards to the defendant's involvement. Well, he tries, like I said, he tries to minimize his actual participation. To the extent that he had less of a role, and there wasn't evidence that he actually stabbed Mr. Oliva, well, that was reflected in his sentence. He got the lowest sentence of all these co-defendants. But it doesn't make him any less accountable for the co-defendants' behavior, and it doesn't make him any less a principal in the offense of the mob action. With regard to the corpus delecti argument, as I believe Justice Gordon pointed out, and Sergeant of the Supreme Court said that to prove someone guilty of a crime, there's two things that have to be proven, the corpus delecti and that the crime was committed by the defendant. Well, the corpus delecti is that a crime was committed. There can be no doubt and no ambiguity that a crime was committed. The medical examiner testified that Alan Oliva was stabbed to death, okay, and that he had contusions on his body. To say nothing of the testimony from Mario Gallegos and Wayne Cates recounting the details of the attack, Mario talked about it because he was there and he was beaten and he fled. He was there with his victim who ends up getting beaten to death and stabbed to death. Wayne Cates testified to the third-party statements of the co-defendants about who committed the crime. What about the other component of Sergeant in terms of it was committed by the defendant? Well, the identity is not part of the corpus delecti. There's a case, a decision from this court in a wiki from 2008 that the identity of the accused as the offender is the ultimate issue. It's not part of the common, excuse me, it's not part of the corpus delecti. You said it's Sergeant. Sergeant has two components to it. Correct, that a crime occurred and that the crime was committed by the defendant. So the ultimate issue is the identity. Well, the defendant admits his involvement, as I said earlier, and he's accountable for the co-defendants. So for those reasons, the evidence was more than sufficient. And to the extent that counsel argues that this was sort of two different fights going on, well, it wasn't. Mario said that they were within feet of each other, so they walked to get cigarettes, they walked back. It doesn't even make sense that they'd be walking 20, 30 feet apart, that they were somehow separated. There's no evidence of that. There was one fight. The cases are very clear, too. So to the extent that the defendant is now saying, well, maybe I didn't kick him, maybe I didn't strike a blow. Well, in that case, in that Davis case, the defendant doesn't need to strike a blow to be accountable. He doesn't even need to strike a blow to be a principle in the mob action. Sam? You know, what bothers me about this is this. Let's assume that the defendant was telling the truth, that he's not a member of the gang anymore, but he goes to a barbecue and they're all there. And, you know, these are his friends from the past, but he doesn't want to be involved in any of the things that they do. And they all run out, and he comes to take a look. And let's assume he even tries to kick at somebody to show that he's not a puppy, but he doesn't really hit the guy. He's going to be found guilty of part of the design because he's there. I couldn't agree with you more, Your Honor. And I was preparing for this. I was trying to come up with an example of someone who just decided sui sponte, sort of on the fly, well, I'm going to join with them. He could be painting the walls in the apartment at the barbecue. He's the painter they hired. And someone comes in here, there's some flakes. He doesn't even need to share in the actual motive that clearly was a gang motive. If he ran out with them, he participated with them, he's guilty of mob action. If he went out there, he put his paintbrush down and went out there. So it doesn't even matter. He's got a tattoo. His tattoo is stated. He was an SB. He's not an SB any longer. He's guilty of felony murder because he attached himself to this group and he participated in the mob action. So I think on some level that's sort of a red herring because he's clearly guilty of mob action. And there's no question. It's not even argued on appeal that the victim was not killed during the course of the mob action. But with regard to the gang evidence, since it is raised, to suggest as the defendant does that this gang evidence was not relevant, I forget the direct quote from the defense brief that had no relevance to this case, is absurd. This was a gang case. Alan Riegel lost his life in May of 2010 because the defendant and the co-defendant said he was a gangbanger. He was wearing the wrong shirt in the wrong neighborhood. So to say that gang evidence wasn't relevant, wasn't necessary, it was crucial. The entire motivation for this case, excuse me, for the attack and the murder, was the alleged supposed gang membership on behalf of the victims. So but for the victim's supposed rival gang affiliation, there being flakes or Latin counts in Satan's disciple territory, they wouldn't have been attacked. So to say that this is not a gang's case is, I believe, is untrue at a minimum. There was an allegation that there was no statements or any other evidence that this was gang-related at the time of the killing. So while the bats are being wielded or the knife or the ice pick is being wielded, well, case testified that Ramirez said that when they went up to these people, whether it was Mario Gallegos or Alan O'Leary, they said, what are you? So that's coming from one of the co-offenders' mouths. What are you? And one of the, it was either O'Leary or Gallegos says, I'm not shit. Meaning I'm not a gang member. Well, there's your instant-on gang motivation right there. If you had nothing else showing that this was gang-related. And I submit to this court there was overwhelming evidence of the gang motivation behind this murder. So counsel refers to it as a gang sideshow. It was the main event. It wasn't the sideshow. It was the sole motivation, the sole reason for the victim losing his life on that day. So if there are no further questions, I guess we've got the other issues raised. We would stand on our brief with regard to those, and ask that this court affirm the defendant's conviction for first-degree murder. I'd like to briefly address two points that were asked of counsel. Justice Reyes asked counsel, well, didn't, Mario Gallegos didn't identify the defendant. I think it's important that Mario Gallegos did identify each and every co-defendant numerous times through the course of these lineups. And that he viewed a lineup with Gary Sams and didn't recognize him at all. Second is I want to touch on this corpus delicta because there's no doubt that a crime occurred here. I'm not dismissing that or arguing that. It's the second part of this corpus delicta rule that I don't know if we're in disagreement with, but that it has to be committed by the defendant. And another Supreme Court case, People v. Lara, a 2012 case, states that the corpus delicta rule and requires the identity of the defendant to be part of that rule. Now, aside from Mr. Sams' confession, the details in the case, the evidence in the case, needs to be consistent with the confession. We just don't have that here. There's nothing, whether it be Mario Gallegos, Wayne Cates, Don Cupichatti, detectives weren't there, but all the other evidence in this case doesn't bolster the confession, doesn't strengthen the confession, doesn't conform with the confession. So the corpus delicta rule is run afoul here because nothing that Gary Sams admitted to during the course of his 30 hours inside of that interrogation room was borne out by the evidence at trial. If there's no other questions, I'll stand on my brief as to the other points that I did not address today. We would ask you to reverse Mr. Sams' conviction. I thank you for your time. Okay, well, thank you for giving us a very interesting case, and you guys did a good job in their presentation and in your briefs, and we'll take this case under advisement, and the court is adjourned. Thank you.